**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| CAMERON JONES, individually and on behalf of all others similarly situated, ) | CASE NO. |
| ) | SECTION |
| Plaintiffs, ) | |
| ) | MAGISTRATE |
| vs. ) | |
| ) | |
| CARRIER IQ, INC., HTC CORPORATION, ) | |
| HTC AMERICA, INC., SAMSUNG ) | |
| TELECOMMUNICATIONS AMERICA, LLC, ) | |
| and SAMSUNG ELECTRONICS CO., LTD. ) | COMPLAINT-CLASS ACTION |
| ) | |
| Defendants. ) | JURY DEMAND |
| ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Cameron Jones ("Plaintiff"), individually and as a representative of the class defined herein (the "Class"), brings this action against the defendants identified below ("Defendants") and avers as follows:

### NATURE OF THE ACTION

1.      This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all Louisiana residents, to recover damages suffered by Plaintiff and the Class Members as a result of the unlawful interception and tracking of communications from private mobile phones, handsets and smart phones using invasive software. Defendants, Carrier IQ, Inc., HTC Inc., HTC America, Inc., Samsung

1

Telecommunications America, LLC, and Samsung Electronics Co., LTD., ("Defendants") have unlawfully intercepted private electronic communications originating from private mobile phones, handsets and smart phones. Carrier IQ's invasive software to date is estimated to be embedded on at least 140 million cellular devices, entirely without the users' knowledge. This practice clearly violates Federal Law and Louisiana state law as enumerated herein.

2.     Defendant Carrier IQ, Inc. ("Carrier IQ"), a provider of mobile services intelligence solutions to the wireless industry, created and provides software that is embedded on cellular devices manufactured by Defendants HTC Corporation, HTC America, Inc.; Samsung Electronics America, LLC and Samsung Electronics, Inc. ("Defendant Manufacturers"). Carrier IQ touts its software as a tool for cellular carriers and device manufacturers to improve end-user experience on cellular devices. Carrier IQ maintains that its software does not log key-strokes and does not intercept, store and transfer class members electronic communications to third parties, including but not limited to cellular carriers and phone manufacturers.

3.     Upon information and belief, Carrier IQ software in fact logs keystrokes and stores and transmits to third parties detailed information, including the content of user messages sent and received. Many of these communications contain private and privileged communications.

## PARTIES

4.     Plaintiff, Cameron Jones, is a citizen of Louisiana who resides within this district in Jefferson Parish, Louisiana.

5.     Defendant, Carrier IQ, Inc. ("Carrier IQ") is a Delaware corporation,

2

headquartered in Mountain View, California, with additional offices in Chicago, Boston, London (UK) and Kuala Lumpur (Malaysia).

6.      Defendant, HTC Corporation ("HTC") is a Taiwan corporation and cellular device manufacturer located in Taoyuan, Taiwan. HTC has offices within the United States and conducts business throughout the United States, including Louisiana. HTC is also the parent company of Defendant, HTC America, Inc. .

7.      Defendant, HTC America, Inc. ("HTC America") is a Washington corporation with its principal place of business in Bellevue, Washington. HTC America conducts business throughout the United States, including Louisiana.

8.      Defendant, Samsung Telecommunications America, LLC, ("Samsung America") is a Texas limited liability company with its principal place of business in Dallas, Texas.

9.      Defendant, Samsung Electronics Co., Ltd., ("Samsung") is a Korean company with its principal place of business at 1320-10, Seocho 2-dong, Seocho-gu, Seoul 137-857, South Korea. Samsung has offices within the United State and California and conducts business throughout the United States, including Louisiana.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. § 1332(d)(6), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business;

11.      This court has subject matter jurisdiction over this action under 28 U.S.C.

§ 1331 based on Federal question presented by defendants alleged violation of the Federal Wiretap Act, 18 U.S.C. § 2511, *et seq.,* and as amended by the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*; the Telecommunications Act of 1996, 47 U.S.C. § 201 *et seq.*, in particular §222 thereof, and the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C §1961 *et seq.*, and this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

12.     Personal jurisdiction exists in this venue because Defendants have done and continue to do substantial business in this jurisdiction.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants' unlawful practices are alleged to have been committed in this federal judicial district and Defendants regularly conduct business in this district.

## FACTUAL ALLEGATIONS

14.     According to its own website, Defendant Carrier IQ claims to be the leading provider of mobile services intelligence solutions to the wireless industry.

15.     Defendant Carrier IQ also claims on their website "As the only embedded analytics company to support millions of devices simultaneously, we give wireless carriers and handset manufacturers unprecedented insight into their customers mobile experience."

16.     Defendant Carrier IQ describes its ability to track and deliver "data drawn directly from your subscribers' devices" to provide "detailed insight into the mobile experience as delivered at the handset" and under the heading "What we do" on its website, Carrier IQ states:

> Carrier IQ solution goes beyond traditional point offerings that
> address a single business problem, to provide a comprehensive

4

Mobil Service Intelligence platform which builds upon underlying customer experience data to enable all areas of your business to operate more effectively: from planning to operations, from marketing to customer care.

Recognizing the phone as an integral part of a mobile service delivery, and using the device to measure key parameters of service quality and usage, the Carrier IQ solution gives you the unique ability to analyze in detail usage scenarios and fault conditions by type, location, application and network performance which providing you with a detailed insight into the mobile experience as delivered at the handset rather than simply the state of the network components carrying it.

The resulting unprecedented insight allows you to manage your business directly to KPIs based on your customer's experience, not just system statistics.

*See* http://www.carrieriq.com/company/index.htm.

17.     Defendant, Carrier IQ embeds communication-interception software in cellular devices to measure performance and user experience with no visible notice by the user.

18.     Defendant Carrier IQ's data processing center collects the data obtained from the communication-interception software for near real-time monitoring and intelligence.

19.     Upon information and belief, Defendant Carrier IQ is the only company in the industry embedding communication-interception software in millions of cellular devices.

20.     Defendant Carrier IQ touts on their website, "[i]dentify exactly how your customers interact with services and which ones they use.  See which content they consume, **even offline.**" (boldface emphasis added).

21.     Defendant Carrier IQ states on the Carrier IQ website that the

communication-interception software answers business critical questions including "How do users respond to mobile advertising."

22.     Defendant Carrier IQ states on the Carrier IQ website that the communication-interception software features include "View application and device feature usage, such as camera, music, messaging, browser and TV".

23.     Defendant Carrier IQ further touts that their services give "unique powerful insight into mobile service quality and **user behavior**", allowing the customer to "identify new business opportunities."    (boldface emphasis added).

24.     Defendant Carrier IQ also states on their website that their communication-interception software "uses data directly from the mobile phone itself to give a precise view of how users interact with both their phones and the services delivered through them, **even if the phone is not communicating with the network.** (boldface emphasis added).

25.     Defendant Carrier IQ's website, under the heading "Privacy and Security," discusses the implications of its surreptitious actions regarding the interception and storage of Plaintiffs and consumers cellular device usage data and states:

> Carrier IQ enables mobile operators, mobile device manufacturers, application vendors and other participants in the Mobile Ecosystem to deliver high quality products and services, based on what you want, where you want and to work and perform the way you expect.

> In providing our products and services, Carrier IQ enables our customers to gather information on Mobile User Experiences. Carrier IQ products were developed from inception to respect and protect user privacy and security. We have established "Best Practices" approach to privacy and security. Our products are designed and configured to work within the privacy policies of our end customers and include functions such as anonymization and encryption. When Carrier IQ's products are deployed, data gathering is done in a way where the end user is informed or involved.

> With the deployment on over 130 million phones globally, we have considered experience in protecting the privacy of the end user and doing so in a highly secure manner.  Information transmitted from enabled mobile devices is stored in a secure data center facility that meets or exceed industry best practices guidelines for security policies and procedures.
>
> Our data gathering and data storage policies are built from industry best practice.   Our products allow us to address privacy & security requirements that vary country-by-country and customer-by-customer. There are a variety of techniques involved in protection of privacy and in implementation of security policy, including anonymization or certain user-identifiable data, aggregation of data and encryption of data, etc.
>
> We work in partnership with our customers to ensure compliance with their data collection and protection policies.  While much of the data we gather is already available through alternative methods, we make it more efficient and useful – aimed at improving products, services and quality for the end user.

*See* http://www.carrieriq.com/company/privacy/htm

26.     While Carrier IQ's claims that when their communication-intercepting software is deployed, "data gathering in done is a way where the end user is informed or involved[,]" to the contrary, Plaintiffs and members of the Class were not informed and were unaware that Defendant Carrier IQ's software was surreptitiously logging and transmitting private, privileged, and/or sensitive information from consumers' mobile phones, without the consent or knowledge of the users, in violation of federal and state laws.

27.     Public attention regarding privacy concerns surrounding Carrier IQ's communication-intercepting software first surfaced after Trevor Eckhart, a security researcher, published on the internet his discovery of Carrier IQ communication-intercepting software on his HTC brand smartphone cellular device.  Eckhart's video seemingly demonstrated Carrier IQ's keystroke logging, even offline.

7

28.     Mr. Eckhart described the Carrier IQ communication-intercepting software as "rootkit," which is "software that enables continued privileged access to a computer which actively hiding its presence from administrators by subverting standard operating system functionality or other applications." (Citing *Wikipedia*).

29.     In response, Defendant Carrier IQ sent a cease and desist letter to Mr. Eckhart demanding that he retract his description of Carrier IQ's communications-intercepting software as a rootkit, accusing him of copyright infringement and threatening legal action.

30.     The Electronic Frontier Foundation ("EFF") in support of Mr. Eckhart, sent a letter to Carrier IQ which showed that Carrier IQ's claims were baseless and demanding that Carrier IQ withdraw its letter.

31.     In response to the developing situation, on November 23, 2011, Carrier IQ issued a release stating:

> As, of today, we are withdrawing our cease and desist letter to Mr. Trevor Eckhart. We have reached out to Mr. Eckhart and the Electronic Frontier Foundation (EFF) to apologize. Our action was misguided and we are deeply sorry for any concern or trouble that our letter may have caused Mr. Eckhart. We sincerely appreciate and respect EFF's work on his behalf, and share their commitment to protecting free speech in a rapidly changing technological world…
>
> We would like to take this opportunity to reiterate the functionality of Carrier I Q's software, what it does not do and what it does:
> - Does not record your keystrokes.
> - Does not provide tracking tools.
> - Does not inspect or report on the content of your communications, such as the content of emails and SMSs.
> - Does not provide real-time data reporting to any customer.

> *See* http://www.carrieriq.com/company/PR.EckartStatement.pdf.

32.     On or around on November 28, 2011, Mr. Eckhart published a further

analysis in a report titled Carrier IQ Part 2 which received wide publication and was widely reported. For example, Andy Greenberg, reporting for *Forbes*, explained:

> As Eckhart's analysis of the company's training videos and the debugging logs on his own HTC Evo handset have shown, Carrier IQ captures every keystroke on a device as well as location and other data, and potentially makes that data available to Carrier IQ's customers. The video he's created shows every keystroke being sent to the highly-observed application on the phone before a call, text message, or Internet data packet is ever communicated beyond the phone. Eckhart has found the application on Samsung, HTC, Nokia and RIM devices, and Carrier IQ claims on its website that it has installed the program on more than 140 million handsets.

*See*    http://www.forbes/com/sites/andygreenberg/2011/11/30/phone-rootkit-carrier-iq-may-have-violated-wiretap-law-in-millions-of-cases/

33.    In response to the developing crisis regarding privacy concerns, Andrew Coward, Chief marketing officer for Carrier IQ was quoted as follows:

> "We're as surprised as anybody to see all that information flowing. It raises a lot of questions for the industry-any-not (only) for Carrier IQ." *See Carrier IQ: We're As Surprised As You.* CNNMoney.com, 12/02/11

34.    Another Android developer, Tim Schofield, has performed extensive research on the presence of Carrier IQ communication-intercepting software on multiple Android smartphone platforms. Schofield noted that in addition to the privacy concerns, the embedded Carrier IQ communication-intercepting software is always operating and cannot be turned off. The Carrier IQ communication-intercepting software necessarily uses system resources, thus slowing performance and decreasing battery life. In addition to having their private communications intercepted, Plaintiffs and potential Class members are being denied optimal performance and capacity of their devices. These devices are marketed to consumers, in part, based on their speed, performances, capacity and battery life. In addition, users potentially incur longer air time usage due to the

degradation of device performance by the Carrier IQ communication-intercepting software, and thus additional costs.

35.     Defendant Carrier IQ captures and records every keystroke entered on the mobile device, as well as location and other private data. Carrier IQ has itself admitted same in public documents, see Carrier IQ's patent application #20110106942 which contains claims regarding the collection of keystroke data. Carrier IQ describes their product as a "method of collecting data… wherein the data relates to an end user's interaction with the device….wherein the interaction with the device comprise the end user's pressing of keys on the device. "

36.     Defendant, Samsung produces mobile phones and handsets, including the "Galaxy" smartphone.

37.     The Carrier IQ communication-intercepting software is embedded on the Samsung Galaxy phones.

38.     Defendant HTC produces mobile phones and handsets, including "Android" smart phones.

39.     The Carrier IQ communication-intercepting software is embedded on the HTC Android phones.

40.     Plaintiff, Cameron Jones, currently owns a HTC Android and previously owned and used a Samsung Galaxy smartphone and HTC Evo operating on the T-Mobile USA, Inc. ("T-Mobile") mobile network. These devices are embedded with Carrier IQ communication-intercepting software. Plaintiff regularly sends and receives SMS (text) messages on his handheld cellular phones.   At all relevant times Plaintiff's cell phone was used to electronically send various types of private and confidential data over the cell

phone network.   Plaintiff was unaware and did not consent or give permission for Defendants to surreptitiously intercept, monitor and collect this data.

41. As a result of the unknown, pervasive, and unpreventable functions of the Carrier IQ communications-interception software, the private, personal and privileged communications of Plaintiff and Class Members have been illegally intercepted and transmitted by and to Defendants Carrier IQ and Samsung and/or HTC.   In addition, Plaintiff and Class Members have not been able to use their smartphone devices at seller-represented performance levels because the Carrier IQ communication-interception is constantly operating in the background. In addition, Plaintiff and Class Members have potentially incurred longer air time usage due to the degradation of device performance by the Carrier IQ communication-intercepting software, and thus additional costs.

42. During all times relevant herein, Plaintiff used and maintained a cellular phone on the T-Mobile wireless network.

43. Plaintiff and the Class Members, as defined below, were unaware of Defendants' wrongful conduct, and were unable to discover it due to Defendants' concealment.

44. On November 30, 2011, the United States Senate Committee on the Judiciary wrote a letter to Carrier IQ regarding Senate concerns over the privacy scandal and stating the actions alleged "may violate federal privacy laws, including the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act.   **This is a potentially very serious matter."**  (boldface emphasis added).

11

## CLASS DEFINITION

45.     Plaintiff brings this class action individually and on behalf of all others similarly situated, who are members of the following class (the "Class") pursuant to Federal Rules of Civil Procedure Rule 23:

> All Louisiana residents who own or owned a cellular phone device manufactured by HTC, Inc., HTC America, Inc. and/or Samsung on which Carrier IQ software was installed or embedded.

> Specifically excluded from the class are Defendants; Defendants' affiliates and subsidiaries; Defendants' current or former employees, officers, directors, agents, and representatives; and any judge or magistrate judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in the judge's household; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

## CLASS ACTION ALLEGATIONS

46.     **Numerosity:** The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court. Based on Defendant Carrier IQ's representation that the software is installed on over 140 millions devices, it is likely that the proposed class will consist of millions of members.

47.     **Commonality:** There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to the following:

a.     Whether Defendants have embedded Carrier IQ's communication-intercepting software on the cellular devices used by Plaintiff and the Class, which Carrier IQ has already publicly admitted;

b.     Whether Defendants' embedding of Carrier IQ's communication intercepting software captures and records every keystroke entered on the cellular devices

of Plaintiff and the Class, which Carrier IQ has already publicly admitted in public documents;

      c.      Whether Defendants' embedding of Carrier IQ's communication-intercepting software and interception of device user communications constitutes a violation of federal and state laws on privacy;

      d.      Whether Carrier IQ software installed on Plaintiffs' and proposed class members communication devices has intercepted, and whether it has re-transmitted, Plaintiff's and proposed Class members SMS text messages, keystrokes, telephone numbers, and other information, all without the knowledge and consent of device owners and/or users, and whether the software continues to do so;

      e.      Whether Carrier IQ and the Manufacturer Defendants have violated the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.,* including the prohibition on the interception, disclosure, and use of wire, oral or electronic communications, or otherwise, by way of the acts or omissions set forth in this complaint;

      f.      The proper measure of damages under the Federal Wiretap Act;

      g.      Whether Defendants' interception or data collected violated the Louisiana Electronic Surveillance Act;

      g.      Whether Defendants' interception, disclosure, and use of wire, oral or electronic data collected by Defendant Carrier IQ, and/or the Manufacturing Defendants violated Louisiana law;

      e.      Whether Carrier IQ and the Manufacturing Defendants have unlawfully profited and been unjustly enriched from their conduct, and whether Defendants must disgorge profits to the Plaintiff and members of the proposed class;

f.      Whether Plaintiff and members of the proposed Class are entitled to statutory and other damages, civil penalties, punitive damages, restitution, and/or declaratory or injunctive relief;

g.      The amount of damages Plaintiff and the proposed Class should receive in compensation;

48.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff and the proposed Class have suffered similar harm as a result of Defendants' actions.

49.     **Adequacy of Representation:**    Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed Class because Plaintiff's interests do not conflict with the interests of the Class Members the Plaintiff seeks to represent. Plaintiff has no claims antagonistic to those of the Class. Plaintiff has retained competent counsel, experienced in complex class action cases and similar consumer litigation.

50.     **Predominance and Superiority:**    This proposed class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal

14

and factual issues common to all claims related to the Defendants' conduct alleged herein.   By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**COUNT I**
**VIOLATION OF THE FEDERAL WIRETAP ACT**

51.     Plaintiff repeats and re-allege every allegation above as if fully set out herein.

52.     The Omnibus Crime Control and Safe Street Act of 1968, also known as the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, provides:

> [A]ny person who ....intentionally intercepts, endeavors to intercept, ... any wire, oral or electronic communication;...shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

53.     Defendant Carrier IQ and Manufacturing Defendants, as a result of the Carrier IQ software and their own implementing or ancillary software, have intentionally intercepted, endeavored to intercept, or procured others to intercept or attempt to intercept, wire and/or electronic communications as described herein, all without the knowledge, consent or authorization of Plaintiffs or the proposed Class, in violation of 18 U.S.C. § 2511(1). *See* 18 U.S.C. § 2511(1)(a).

54.     Defendant Carrier IQ and the Manufacturing Defendants, as a result of the Carrier IQ software and their own implementing or ancillary software, have intentionally disclosed, or endeavored to disclose, to other persons the contents or wire and/or electronic communications, knowing or having reason to know that the information was obtained through the interception of wire or electronic communications, as described in

15

18 U.S.C. § 2511(1)(c).   Accordingly, these Defendants have violated 18 U.S.C. §2511(1).

55.   As a result of these violations of law, Plaintiff and the class suffered harm and injury, including the interception and transmission of private, personal and privileged communications and a reduction in the performance level of the devices in question.

56.   As a result of these violations of law, Defendant Carrier IQ and the Manufacturing Defendants are subject to civil suit, and Plaintiff and the Class are entitled to appropriate relief, including that set forth in 18 U.S.C. § 2520(b).   Such appropriate relief includes "preliminary or other equitable or declaratory relief as may be appropriate"; "damages" as described in the statute; and "a reasonable attorney's fee and other litigation costs reasonably incurred."   18 U.S.C. § 2520(b)..   Regarding damages, "the court may assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the Plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."   18 U.S.C. § 2520(c)(2).

57.   Plaintiff, on his own behalf and on behalf of the proposed Class, seeks all such appropriate relief, including but not limited to statutory damages as set forth above.

### COUNT II
### PER SE VIOLATIONS OF LAW ESTABLISHING USER RIGHT OF CONFIDENTIALITY AND PRIVACY

58.   The foregoing paragraphs are incorporated as if fully set forth herein.

59.   Defendants owed Plaintiff and Class members a duty to not intercept personal and confidential information under federal and state law establishing user rights of confidentiality and privacy, including but not limited to the Federal Wiretap Act, 18

U.S.C. § 2511, *et seq.,* and as amended by the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq., the Telecommunications Act of 1996, 47 U.S.C. §201 et seq., in particular §222 thereof, the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.,* the Louisiana Electronic Surveillance Act and the Louisiana Civil Code.

60.     Defendants breached the statutory confidentiality and privacy rights of Plaintiff and the Class through use of the Carrier IQ communication-interception software.

61.     Defendants' active misrepresentation as to the embedding and use of the Carrier IQ communication-interception software vitiates any user consent which expressly or implicitly waived statutory confidentiality and privacy rights of Plaintiff and the Class.

62.     As a result of Defendants' breach of statutory confidentiality and privacy rights of Plaintiff and the Class, the Plaintiff and Class members suffered general and specific damages arising from the natural and foreseeable consequences of Defendants' conduct. Plaintiff, on his own behalf and on behalf of the proposed Class, seeks all such appropriate relief, including but not limited to statutory damages as set forth in the foregoing laws.

### COUNT III
### LOUISIANA ELECTRONIC SURVEILLANCE ACT

63.     The foregoing paragraphs are incorporated as if fully set forth herein.

64.     Defendants violated the Louisiana Electronic Surveillance Act, La. R.S. 15:1301 *et seq.*, in particular but not restricted to La. R.S. 15:1303 and 1304, through a pattern and practice of illegally intercepting and transmitting Plaintiffs' private and

privileged communications.

65.     The following acts of Defendants violate the Louisiana Electronic Surveillance Act:

(1) Use of devices or instrumentalities attached to and/or embedded in a wire communication device, transmitting or capable of transmitting signals and which is used to intercept a wire or oral communication;

(2) Use of devices or instrumentalities attached to and/or embedded in a wire communication device, transmitting or capable of transmitting signals and which is used to intercept a wire or oral communication, which interferes with the transmission of such communication;

(3) Willfully disclosing, or endeavoring to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication;

(4) Willfully using, or endeavoring to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication;

(5) Willfuly procuring any other person to intercept or endeavor to intercept any wire or oral communication; and

(6) Willfully manufacturing, assembling, possessing, or selling any electronic, mechanical, or other device, used or to be used to intercept a wire or oral communication.

66.     Plaintiffs have a civil cause of action against the Defendants individually and collectively. Plaintiffs are entitled under the Louisiana Electronic Surveillance Act to recover pursuant to La. R.S. 15:1312(a):

(1)  Actual damages, but not less than liquidated damages computed at the rate of one hundred dollars a day for each day of violation or one thousand dollars, whichever is greater pursuant to La R.S. 15:1312(a)(1);

(2)  A reasonable attorney's fee and other litigation costs reasonably incurred pursuant to  La R.S. 15:1312(a)(2);

(3)  Punitive damages pursuant to La R.S. 15:1312(a)(3);

### COUNT IV
### CAUSES UNDER LOUISIANA'S CIVIL CODE

67.  The foregoing paragraphs are incorporated as if fully set forth herein.

68.  Plaintiffs have causes of action under the Louisiana Civil Code for the following enumerated breach of obligations by Defendants:

(a)  Redhibition, and breach of warranty of fitness, and breach of implied warranty of protected communications, directly under La. C.C. Art 2520 and under La. C.C. Art. 2520 due to the incorporation of federal and state confidentiality and privacy rights into such contracts, arising from the interception and disclosure of Plaintiffs communications, and increased costs resulting from diminished utility of the devices and the incurring of additional airtime due to degradation of device performance due the operation of the communication–interception software.

(b)  Misrepresentation, detrimental reliance and fraud due to Defendants stating the Carrier IQ communication-interception software was not embedded and/or in use, whereas the Carrier IQ communication-interception software was embedded and/or in use in the devices.

69.  Plaintiff and the class are entitled to all consequential damages resulting from the unpermitted interception and disclosure of Plaintiffs communications by the use

of the Carrier IQ communication-interception software under La. C.C. Art. 2315, and increased costs resulting from diminished utility of the devices and the incurring of additional airtime due to degradation of device performance due the operation of the communication–interception software.

70.     Plaintiff and the class additionally or in the alternative have the right to rescind any contracts with Defendants under La. C.C. Art 1964, and to claim damages and attorney fees arising out of Defendants' actions.

71.     Plaintiffs reserve the right to claim other state causes of action available under the Louisiana Civil Code arising out of or related to the foregoing causes of redhibition, tort and/or rescission. Plaintiff, on his own behalf and on behalf of the proposed Class, seeks all such appropriate relief under the foregoing laws.

**COUNT V**
**RACKETEER INFLUENCED AND CURRUPT ORGANIZATIONS**

72.     The foregoing paragraphs are incorporated as if fully set forth herein.

73.     Defendants have collectively engaged in a pattern of racketeering activity pursuant to, *inter alia*, 18 U.S.C. 1962 (a), (b), (c) and (d) with at least two acts of racketeering activity, the last of which occurred within ten years after the commission of a prior act of racketeering activity, involving violations of, *inter alia*:

    i)      18 U.S.C. §1028,(a)(2,3,5 and 7);

    ii)     18 U.S.C. §1029(a)(2,3,4,7,8 and 9);

    iii)    18 U.S.C. §1343;

    iv)     La. R.S. 15:1303(a)(1,2,3 and 4) and La. R.S. 15:1304(a); and,

    v)      Those other violations as may be shown at a trial of this matter.

These violations were perpetrated through employment of devices to intercept, transmit,

20

disseminate and store the cellular device usage data and personal, confidential and other privileged communications and information of the Plaintiff and the Class, all in violation of 18 U.S.C. §1962 and the Louisiana Electronic Surveillance Act, La. R.S. 15:1301 *et seq.*

74.     Defendants' violations of 18 U.S.C. §1028, 18 U.S.C. §1029 and 18 U.S.C. §1343 directly affect or were intended to affect interstate commerce, in violation of 18 U.S.C. § 1962 (b),(c) and (d).

75.     Plaintiff and the Class file under a private right of action pursuant to 18 U.S.C. §1964. Plaintiff, on his own behalf and on behalf of the proposed Class, seeks all such appropriate relief, including but not limited to statutory damages as set forth in the foregoing laws.

76.     18 U.S.C. § 1964(c) states in pertinent part "any person injured in his business or property shall recover three fold the damages he sustains and the costs of the suit, including a reasonable attorney's fee."

### COUNT VI
### VIOLATIONS OF OTHER LAWS

77.     The foregoing paragraphs are incorporated as if fully set forth herein.

78.     Plaintiff and the Class allege such other Violations of Law and all other acts of negligence, recklessness, and omissions which may be proven through discovery or at the time of trial of this matter, all of which were in contravention of the duties imposed by law on Defendants in favor of Plaintiff and Class members.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment in favor of Plaintiff and all other

Class members and against Defendants and award the following relief:

      a.     That the Court certify this case as a class action and appoint the named Plaintiff as a Class representative and his counsel to be Class counsel;

      b.     Actual damages for injuries suffered;

      c.     Determine Defendants' liability for damages;

      d.     Award damages suffered by Plaintiff and all Class members after due proceeding are had;

      e.     Award punitive damages where legally appropriate;

      f.     Award prejudgment and post-judgment interest on all damages as allowed by law;

      g.     From a common fund created, award attorneys' fees, expert fees and all costs and expenses incurred in the prosecution of this action as allowed and/or required by law as applicable to each Count, as pled herein, and in this matter as a whole;

      h.     Award reasonable attorney's fee and other litigation costs reasonably incurred pursuant to 18 U.S.C. § 2520(b);

      i.     Award reasonable attorney's fees and other litigation costs pursuant to Louisiana Electronic Surveillance Act, La. R.S. 15:1301 et seq.;

      j.     Award punitive damages pursuant to Louisiana Electronic Surveillance Act, La. R.S. 15:1301 et seq.;

      k.     Award reasonable attorney's fees and triple the damages sustained by the Class pursuant to 18 U.S.C. § 1964(c);

      l.     Grant such additional or different relief as the interests of justice, law or equity may require.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury.

Dated: January 24, 2012.

_____
Eric J. O'Bell, T.A. (La. Bar# 26693)
Gauthier, Houghtaling & Williams, L.L.P.
3500 North Hullen Street
Metairie, LA 70002
(504) 456-8600
(504) 456-8624
ejoatlaw@aol.com

and

_____
Paul M. Brannon (La. Bar# 22269)
Brannon Law Firm, L.L.C.
3500 North Hullen Street
Metairie, LA 70002
(504) 456-8696
(504) 456-8697
pmb@brannonlawfirm.com

and

Melvin J. Burmaster (#19508)
Elizabeth Welsh Defley (#24778)
3520 General DeGaulle Drive
Suite 1035
New Orleans, Louisiana 70114
(504) 366-8025
(504) 366-8026 facsimile
melvinburmaster@yahoo.com
attydefley@yahoo.com